IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

**MELISSA J.R. N.,**

    Plaintiff,

vs.

**COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,**

    Defendant.

Case No. 1:21-cv-01099-AA
**OPINION AND ORDER**

AIKEN, District Judge:

Plaintiff Melissa J. R. N.[1] seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("SSDIB").

---

[1] In the interest of privacy, this opinion uses only first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

Page 1 – OPINION AND ORDER

This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). For the reasons below, the Commissioner's decision is AFFIRMED.

## BACKGROUND

On January 18, 2019, Plaintiff filed an application for a period of disability allegedly beginning in December 2017. Tr. 193. In her initial disability report, Plaintiff cited four limiting medical conditions: "lower back fusion (L4-L5)," "sciatica (mostly right side)," "migraines," and "muscle spasms." Tr. 222. During 2018 and prior to filing a claim for disability, Plaintiff had established care with Julie Ohlschwager, N.P., to receive treatment for headaches and chronic back pain. Tr. 356.

Plaintiff's claims were initially denied in March, Tr. 85, and again in November 2019, after reconsideration, Tr. 107. In January 2020, Plaintiff requested a hearing before an administrative law judge ("ALJ"). Tr. 110. The hearing took place on December 9, 2020, by telephone due to COVID-19 pandemic restrictions. Tr. 40-76. The ALJ determined that the Plaintiff was not disabled. Tr. 10. When, on June 9, 2021, the Appeals Council denied Plaintiff's request for review, the ALJ's decision became the final decision of the Commissioner. Tr. 1. Having exhausted all administrative remedies, Plaintiff then requested review of that final decision by this Court.

## DISABILITY ANALYSIS

A claimant is disabled if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which … has lasted or can be expected to last for a continuous period of not less than

12 months[.]" 42 U.S.C. § 423(d)(1)(A). Social Security Regulations set out a stepwise process by which an ALJ must determine whether the claimant is disabled within the meaning of the Social Security Act. *Keyser v. Comm'r*, 648 F.3d 721, 724 (9th Cir. 2011). If the claimant is found disabled at any step, there is no need to continue the process to subsequent steps. *See* 20 C.F.R. §§ 404.1520; 416.920.

> The five steps are: (1) Is the claimant presently working in a substantially gainful activity? (2) Is the claimant's impairment severe? (3) Does the impairment meet or equal one of a list of specific impairments described in the regulations? (4) Is the claimant able to perform any work that he or she has done in the past? And (5) Are there significant numbers of jobs in the national economy that the claimant can perform?

*Keyser*, 648 F.3d at 724-25; *see also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four, at which point the burden shifts to the Commissioner for step five. *Bustamante*, 262 F.3d at 953-54. If the Commissioner shows that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Id.*

## THE ALJ'S FINDINGS

The ALJ performed the five-step analysis, ultimately concluding that Plaintiff was not disabled. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date, December 20, 2017. Tr. 19.

At step two, the ALJ found that Plaintiff had the following severe impairments: cervical degenerative disc disease; lumbosacral strain; lumbar degenerative disc

disease; obesity; and migraines. *Id.* The ALJ found that, due to waxing and waning of symptoms secondary to treatment and evidence of situational stressors, Plaintiff's mental impairments were non-severe. Tr. 20. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of a listed impairment. Tr. 25.

The ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform less than the full range of sedentary work with the following limitations: Plaintiff "must never be required to climb ladders, ropes or scaffolds;" she can "occasionally stoop, crouch, kneel, crawl, and climb ramps and stairs, and is able to frequently balance;" Plaintiff is "limited to occasional bilateral overhead reaching;" and must avoid frequent exposure to humidity, vibration, irritants, or unprotected heights. Tr. 26. Plaintiff was also limited to jobs that are performed indoors in normal work setting lighting. *Id.*

At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. Tr. 36. At step five, the ALJ found that in light of Plaintiff's age, education, work experience, and RFC, "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform," including telephone sales representative, telephone order clerk, or receptionist. Tr. 37. As a result, the ALJ found that Plaintiff was not disabled. Tr. 38.

## STANDARD OF REVIEW

The Court must affirm an ALJ's disability determination "unless it contains legal error or is not supported by substantial evidence." *Garrison v. Colvin*, 759 F.3d

995, 1019 (9th Cir. 2014) (citing *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). Evidence is substantial if "a reasonable person might accept [the evidence] as adequate to support a conclusion." Id. at 1009. A reviewing court must "consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Id.*

The Court must uphold the Commissioner's decision if it is "supported by inferences reasonably drawn from the record," and when the evidence before the ALJ is subject to more than one rational interpretation, courts must defer to the ALJ's conclusion. *Batson v. Comm'r*, 359 F.3d 1190, 1193 (9th Cir. 2004). However, the Court cannot affirm the Commissioner's decision on a ground that the agency did not invoke in making its decision. *Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir. 2006). The Court may not reverse an ALJ's decision based on harmless error. *Id.* at 1055-56.

## DISCUSSION

Plaintiff alleges the ALJ erred by (I) improperly rejecting Plaintiff's subjective symptom testimony; (II) improperly rejecting the medical opinion from Nurse Ohlschwager; and (III) failing to find that Plaintiff's migraine headaches met a listing.

### I. Subjective Symptom Testimony

Plaintiff claims that the ALJ improperly rejected Plaintiff's subjective testimony about her symptoms and functional limitations. An ALJ may reject the

plaintiff's subjective testimony about the severity of her symptoms "only by offering specific, clear and convincing reasons for doing so." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2007). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the [testimony]." *Ortega v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995).

In this case, the ALJ found that Plaintiff's allegations about her limitations due to her symptoms were not wholly consistent with the objective medical evidence, with the evidence in the record, or with Plaintiff's activities of daily living ("ADL"). A person who is capable of basic ADL is not necessarily able to work because "impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Garrison*, 759 F.3d at 1016. Also, an ALJ errs in his determination where he "pick[s] out a few isolated instances of improvement over a period of months or years and [treats] them as a basis for concluding a claimant is capable of working." *Id.* at 1017. However, even if not all of the ALJ's findings for discrediting symptom allegations are upheld, the overall decision may stand assuming the ALJ provides other valid rationales. *Batson*, 359 F.3d at 1197.

### A. Back Pain

Imaging studies of Plaintiff's back, as well as assessments occasionally showing tenderness and limited range of motion, show that Plaintiff suffers from physical conditions which could reasonably cause symptoms and limitations of the type Plaintiff alleges. *See e.g.* Tr. 402-03, 470, 511-13. However, the ALJ found that

Plaintiff's allegations about the severity of her symptoms and limitations did not match up with this and other evidence in the record, including Plaintiff's ADL. Tr. 24. At the hearing before the ALJ, Plaintiff testified to significant pain, inability to sit for more than 15 or 20 minutes, and lack of confidence in moving around without triggering spasms or episodes of severe pain. Tr. 59, 63. However, Plaintiff also confirmed that before and during the period of alleged disability, Plaintiff held a part time job before being "let go." Tr. 50-51. Plaintiff was also able to engage at times in various ADL which the ALJ opined are not wholly inconsistent with Plaintiff's description of her pain. Tr. 25. In addition, at visits with healthcare providers Nurse Ohlschwager and a chiropractor, objective measures of Plaintiff's response to palpation and Plaintiff's range of motion waxed and waned throughout her treatment history. Tr. 23-24. The ALJ identified this variability in objective assessments as a factor detracting from the persuasiveness of Plaintiff's symptom allegations. *Id.*

Individually these inconsistencies are an insufficient basis for the ALJ to conclude that Plaintiff's allegations related to back pain are not persuasive. Plaintiff's post-surgical physical condition corroborated by imaging done before and during the period of disability could conceivably cause waxing and waning symptoms of the type Plaintiff describes. Plaintiff might have held a part time job before her back pain compounded other symptoms to subsequently make that impossible, or Plaintiff could have been let go for a reason having to do with her symptoms. However, these realities are not affirmatively established by the evidence in the record. Multiple allegations in multiple contexts, which are inconsistent with objective medical

evidence and other evidence in the record, may reasonably show broader inconsistency of Plaintiff's symptom testimony. Together, these inconsistencies provide a reasonable basis for the ALJ's conclusions. Thus, the ALJ did not err in discrediting Plaintiff's allegations regarding her back pain.

### B. Migraines

On establishing care with Nurse Ohlschwager in 2018, Plaintiff complained of chronic migraines since 2012 which Plaintiff reported she could manage fairly well with prompt use of medication at the onset of an episode. Tr. 357. Throughout the period since the alleged date of onset, Plaintiff's reports to Nurse Ohlschwager show waxing and waning of severity and frequency of migraines, and of Plaintiff's ability to control her migraines with medication. *See e.g.* Tr. 524, 546, & 551. Plaintiff also periodically alleged limitations due to side effects of migraine medications. *See e.g.* Tr. 524, 551. The ALJ found that Plaintiff's allegations of limitations due to chronic migraines were inconsistent with Plaintiff's work history and with her ADL. Tr. 25-28.

The ALJ erred in determining that Plaintiff's alleged limitations due to migraines were not fully consistent with the evidence in the record when the ALJ relied on the variable nature of Plaintiff's symptoms and on specific reports of ADL. Chronic migraines are by nature variable and unpredictable, as is clear from the objective evidence in the record. Therefore, it is inappropriate for the ALJ to rely on waxing and waning symptoms, or on specific instances of Plaintiff participating in ADL, to support a conclusion that Plaintiff's allegations are non-persuasive.

However, this error by the ALJ is harmless because his determination is supported by other circumstances which might reasonably show inconsistency in Plaintiff's allegations. Plaintiff testified at the hearing that she worked a part time for a few months after the alleged onset date of Plaintiff's period of disability. Tr. 50-51. When questioned as to the reason Plaintiff left that job, Plaintiff indicated that she was let go after only a few months, and that Plaintiff suspected her boss "was scared to continue carrying me on the payroll" because of her disabilities. Tr. 51. Plaintiff's work history also shows she earned significant annual income during the five years before the alleged onset of disability, Tr. 197, during which time she was also experiencing frequent migraines, Tr. 357.

The ALJ characterized Plaintiff's work history as inconsistent with Plaintiff's allegations that her migraines prevent her from working. Tr. 28. While Plaintiff is not wrong that the ALJ's cherry picking instances of functionality, and the ALJ's reliance on basic ADL, were in error, this Court is not in a position to reverse the ALJ's determination. Given the evidence in the record, the ALJ's conclusion about the Plaintiff's migraine symptom allegations represents a reasonable interpretation and is thus sufficient to support the ALJ's conclusion. In sum, the ALJ reasonably discounted Plaintiff's testimony concerning her migraines.

## II. Medical Source Opinion

Plaintiff claims that the ALJ improperly rejected the medical source opinion from Plaintiff's primary care provider, Nurse Ohlschwager. Under new social security rules, nurse practitioners are considered professional medical providers capable of

providing a medical opinion. 20 C.F.R. §§ 404.1502(a)(7), 416.902(a)(7). The ALJ must consider every medical opinion in the record and evaluate each opinion's persuasiveness, affording greatest importance to each opinion's supportability and consistency. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). In this case, the ALJ found that Nurse Ohlschwager's medical source opinion about Plaintiff's limitations was inconsistent with the Plaintiff's testimony and with the nurse's own treatment notes.

The ALJ characterized Nurse Ohlschwager's medical source opinion as "extremely restrictive" in describing Plaintiff's level of functionality. Tr. 31. In assessing Plaintiff's physical limitations, Nurse Ohlschwager opined that Plaintiff can rarely lift less than 10 pounds, can never perform any postural activities, and can only perform tasks with her hands and fingers 25% of the time. Tr. 499. In the same questionnaire, Nurse Ohlschwager opined Plaintiff would need to stand and walk for 2 minutes every 15 minutes, and that Plaintiff would need hourly breaks lasting 10 minutes. Tr. 498. In assessing Plaintiff's headaches, Nurse Ohlschwager estimated that Plaintiff experienced 4-5 headaches per week, and opined that Plaintiff would be unable to work at all on a day when she is experiencing a headache. Tr. 501, 503.

The ALJ correctly determined that these limitations are not entirely consistent with Nurse Ohlschwager's treatment notes or with Plaintiff's testimony regarding Plaintiff's ADL. While ability to perform some ADL does not always translate to an ability to work a full-time job, discrepancies between Plaintiff's ADL and Plaintiff's allegedly extreme limitations can support a determination by the ALJ that an opinion is non-persuasive. For example, Plaintiff's alleged inability to ever twist, stoop, or

Page 10 – OPINION AND ORDER

squat, Tr. 499, would essentially render Plaintiff bedridden. But the ADL Plaintiff reported to Nurse Ohlschwager and to the ALJ in Plaintiff's hearing all require some at least some twisting, stooping, and squatting. Similarly, at a frequency of 4-5 headaches per week, days during which Plaintiff can allegedly do no work, Tr. 503, Plaintiff would have missed too many virtual class sessions to have finished an associates degree in early childhood development. Tr. 47.

That Nurse Ohlschwager's medical source opinion is not fully consistent with the nurse's own treatment notes or with Plaintiff's testimony reasonably supports the ALJ's assessment of the medical source opinion as non-persuasive, as well as the ALJ's decision to credit the agency physician, Dr. Desai, over Plaintiff's established care provider. Tr. 30. The ALJ did not err in determining that Nurse Ohlschwager's medical source opinion is inconsistent with the evidence in the record and thus non-persuasive.

### III.   Step 3 Listing

Plaintiff claims that the ALJ erred in finding that Plaintiff's migraine headaches did not meet listing 11.02D. In order to meet a listing, the claimant's impairment must satisfy all of the components of the listing. *Kennedy v. Colvin*, 738 F.3d 1172, 1174 (9th Cir. 2013). Because a finding that claimant's symptoms meet a listed impairment creates a presumption of disability, listed impairments set strict standards and correspond to a high level of severity. *Id.* at 1176. In this case, the ALJ found that neither the frequency of Plaintiff's migraines, nor the resulting level of limitation, were consistent with listing 11.02D.

In assessing primary headache disorders, including migraine headaches, the SSA looks to listing 11.02 for dyscognitive seizures as the "most closely analogous listed impairment." SSR 19-4p. Plaintiff claims her migraine headaches fall under listing 11.02B or 11.02D, which require similar conditions and evidence. Pl. Br., 10. Under listing 11.02B as applied to a primary headache disorder, headaches must occur (i) at least once a week; (ii) for at least three consecutive months; (iii) despite adherence to prescribed treatment. SSR 19-4p; 20 C.F.R. Ch. III, Part 404, Subpart III, Appendix 1. Listing 11.02D requires the same showings as required under 11.02B, but headaches must occur at least once every two weeks, and claimant must experience marked limitation in at least one area of functioning. *Id.* A diagnosis or statement of symptoms alone is insufficient to establish the existence of a medical impairment to meet listing requirements. SSR 19-4p. However, these sources of evidence will be considered alongside concurrent observation of a headache event by a medical provider, any findings on laboratory tests, and claimant's response to treatment. *Id.*

In Plaintiff's case the ALJ considered all the above factors, compared the circumstances to the requirements under the listing, and properly determined that "the record lacks the necessary evidence to satisfy the criteria to meet or medically equal these listed impairments." The ALJ made this determination on multiple bases, though his analysis of this determination came in other parts of the ALJ's opinion. Tr. 21. Plaintiff's testimony and treatment notes indicate that Plaintiff has periodically been able to control her migraines with medication such that their

Page 12 – OPINION AND ORDER

frequency remains below the listed criteria. Tr. 357, 457, 524. Though Plaintiff mentioned side effects of medications to Nurse Ohlschwager, and in her hearing testimony, it is not clear that these side effects rise to a level precluding Plaintiff's adherence to treatment or limiting her functionality. Tr. 27. Finally, and perhaps most importantly, where the ALJ discounted both Plaintiff's symptom allegations and Nurse Ohlschwager's medical source opinion as non-persuasive, the remaining record is indeed insufficient to meet the high bar required for Plaintiff to show that her headaches fall under listing 11.02 as a medically determinable impairment.

## CONCLUSION

The ALJ's findings, and the Commissioner's final decision regarding Plaintiff's disability status, are AFFIRMED.

IT IS SO ORDERED.

Dated this 30th day of November 2022.

                    /s/Ann Aiken

                    Ann Aiken
          United States District Judge